JOHN F. ANTHES, APPELLEE, V. JOHN SCHROEDER ET AL., APPELLANTS, JOHN S. THOMPSON, APPELLEE.

FILED JUNE 8, 1905.  No. 13,845.

1. **Equity.** The mere fact that a creditor has been persistent and determined in his efforts to collect his debt, and has resorted to unnecessarily expensive and vexatious means to that end, affords no just ground for denying him equitable relief in the enforcement of his debt.

2. **Estoppel.** Where one by his conduct induces another to act on the supposition that certain conditions exist, he will not be heard to deny the existence of such conditions where the other would be prejudiced by such denial.

3. **Subrogation.** Ordinarily, a junior mortgagee is not entitled to be subrogated to a lien which did not exist when his mortgage was taken.

4. **Evidence** examined, and *held* to show sufficiently that the lien to which plaintiff seeks to be subrogated existed at the time his mortgage was taken.

5. **Laches.** The facts disclosed by the record *held* insufficient to show that the plaintiff has been guilty of such laches as to deprive him of his right to be subrogated to a superior lien.

APPEAL from the the district court for Clay county: LESLIE G. HURD, JUDGE. *Affirmed.*

*John C. Hartigan,* for appellants.

*William M. Clark* and *George H. Hastings,* for appellee Anthes.

*M. A. Hartigan,* for appellee Thompson.

ALBERT, C.

This suit as originally brought involved the question of marshaling assets and subrogation. Plaintiff was denied

relief in the court below, and appealed to this court, where the decree of the district court was reversed. In the opinion, which is reported in 68 Neb. 370, it was definitely decided that the plaintiff was entitled to subrogation. In that opinion will also be found a somewhat extended statement of the facts necessary to an understanding of the case.

On the second trial in the district court the case was submitted on the same petition, but by the subsequent pleadings in the cause, filed after it had been remanded to the district court, certain new issues were raised, which will sufficiently appear in the discussion which follows. A second trial in the district court resulted in a finding for the plaintiff, and a decree subrogating him to Thompson's mortgage lien on the Jefferson county land, and the case is now here on an appeal from that decree.

One defense urged at this time is that the conduct of the plaintiff in his efforts to enforce his debt has been so inequitable and unconscionable as to deprive him of any right to equitable relief. On that proposition, like every other, we are limited to the record. While it would seem from the record that the plaintiff might have attained his object with less litigation, and at less expense to himself and his debtor, the most that can be said of it is that it shows a persistent and determined effort, perhaps not always wisely directed, on the part of the plaintiff to collect his debt, but does not, so far as we are able to learn, bring him within any rule of equity which would deny him the use of the only remedy left for the enforcement of what must be admitted to be a lawful claim.

Another defense urged is that the plaintiff by reason of laches has lost his right to claim subrogation. We have been referred to no laches of which he has been guilty since this court held that he was entitled to subrogation, nor does it appear that the alleged laches have been in any way prejudicial to third persons. Where the rights of third parties had not intervened, subrogation was allowed after a delay of ten years, in *Home Investment Co. v. Clarson*, 15 S. Dak. 513; of seven years, in

*Kinkead v. Ryan,* 64 N. J. Eq. 454; of four years, in *Darrow v. Summerhill,* 24 Tex. Civ. App. 208.

It is insisted that Thompson's Jefferson county mortgage was given after the plaintiff's mortgage on the Clay county land, and that the plaintiff is not entitled to be subrogated to a lien which did not exist when his mortgage was taken. The rule invoked is sound (Sheldon, Subrogation, sec. 67), but the evidence, we think, does not bring this case within that rule. In reaching that conclusion we have assumed, as it was assumed on the argument, that plaintiff's renewal note and mortgage taken January 2, 1896, places him in no better plight than he was in by virtue of his original mortgage, which is dated March 29, 1905. Schroeder testifies positively that the Jefferson county mortgage to Thompson was given after the mortgage to the plaintiff, referring of course to the original mortgage. This evidence is not only contradictd by the plaintiff, but is considerably discredited by the facts and circumstances surrounding the entire transaction. When the negotiations for the loan from Thompson were pending, the plaintiff held the title to the Clay county land, Schroeder having merely a contract with him for its purchase. The arrangement appears to have been that, to enable Schroeder to make the loan from Thompson, the plaintiff was to convey the fee title to him, and take back a second mortgage for the balance of the purchase price. This mortgage was to be junior to Thompson's. Thompson at first intended to take the Clay county land alone as security, but before closing the loan insisted upon and obtained a mortgage on the Jefferson county land. The mortgage on the Jefferson county land, although dated one day later than the mortgage on the Clay county land, was a part of the same transaction. It would seem from the record that the two mortgages were delivered at the same time, and before the money realized on the loan was paid. Plaintiff's mortgage bears even date with the mortgage on the Jefferson county land. Taking the evidence on this point as a whole, and the nature and object of the several

transactions, we are not required to indulge any violent presumptions in favor of the findings of the trial court to sustain its findings against the defendants on this point.

Another defense strenuously urged is that, at the time the mortgage on the Jefferson county land was given, it was orally agreed between Schroeder and Thompson that it should be effective only in case the Clay county land proved insufficient to satisfy the debt. We think the trial court very properly held against the defendants on this proposition. There is nothing on the face of the mortgage on the Jefferson county land to indicate that it was not security for the Thompson loan as fully and effectively as was the mortgage on the Clay county land, given to secure the same debt. Plaintiff testified that it was understood between him and Schroeder that the Thompson loan should be secured by mortgage on both these tracts of land, and that he was thereby induced to convey the Clay county land to Schroeder and take a second mortgage for the remainder of the purchase price. By giving two mortgages to Thompson, without incorporating the alleged oral agreement in either of them, Schroeder effectively gave it out to the world that the Clay county land and the Jefferson county land were both and alike liable for the satisfaction of the debt. After the plaintiff had acted upon conditions as they were made to appear to be by Schroeder's own act, Schroeder cannot now be heard to urge a secret agreement between himself and Thompson, the effect of which would be to deprive the plaintiff of any right to which he was entitled by virtue of the conditions as they were thus made to appear. In other words, having induced the plaintiff to act on the supposition that certain conditions existed which would give the plaintiff a right to be subrogated to the lien of Thompson, he cannot now be heard to say that, by virtue of a secret agreement with Thompson, such conditions did not exist.

In our judgment the decree of the district court ought to be affirmed, and it is so recommended.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.